## NELSON BURNHAM

### v.

## JOHN D. ROBERTS.

1. ATTORNEY AND CLIENT—*privileged communication.* A bill in chancery, sworn to by a party, but never filed, and which is prepared by his attorney on the client's statement of the facts, is to be regarded as a privileged communication in the hands of the attorney, and is not admissible in evidence against his client.

2. SAME—*evidence of the relation.* Where an attorney at law prepares a bill in chancery in a party's name as complainant, and the attorney signs the party's name to it, and then the name of his firm to the bill, this affords unmistakable evidence of the relation of client and attorney, and a mere denial of the relation by the latter is but ignoring the legal effect of the acts done.

3. EVIDENCE—*weight of bill in chancery as proof of facts stated.* Where it appeared that, when a bill in chancery was partly drawn, a jurat was prepared and sworn to by the complainant, and the attorney afterwards completed the same, but it was never filed, and the complainant testified that he did not know the contents, it was *held*, that, if the bill was admissible in evidence against the complainant, it was of but little weight.

4. PLEADING AND EVIDENCE—*common counts.* The averment in a common count of the sale and delivery of property, is substantial, and must be proved, to warrant a recovery.

5. ASSIGNMENT—*suit on claim against estate.* If a recovery of the price of a claim upon an estate, which has been sold, is sought, under the common counts, the claim must have passed to the purchaser by an assignment or some other act tantamount to a delivery.

6. PLEADING—*when the plaintiff must declare specially.* If a vendor elects to sue for and recover damages for a breach of a contract to purchase, he must declare specially.

7. VENDOR AND PURCHASER—*vendor must perform before he can sue vendee.* Where a vendor sues for damages for the breach of a contract of sale, it must appear that he has been ready and willing, and has offered to perform on his part, or that the vendee has done some act which dispenses with a performance.

8. SAME—*when offer to perform not necessary.* A defendant may dispense with an offer to perform by the plaintiff, by refusing to go on with the contract, or he may, in other modes, dispense with such an offer.

9. MEASURE OF DAMAGES. Where a seller sues for the breach of a contract to purchase, and retains the title to the property, the measure of damages is the difference between the value of the property at the time fixed for delivery, and the contract price.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

This was an action of assumpsit, brought by John D. Roberts against Nelson Burnham, to recover the price of certain claims upon an estate alleged to have been sold. The opinion of the court contains a substantial statement of the leading facts.

Messrs. McCULLOCH & STEVENS, for the appellant.

Messrs. INGERSOLL, PUTERBAUGH BROS., & McCUNE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee alleges that he sold to appellant claims on the estate of one John W. Proctor, for which he was to pay him $825; that appellee held a portion of the claims in his own right, and, by agreement, purchased other claims. He insists that it was agreed that appellee should have the claims probated against the estate, and that appellant was then to pay him for them, and that he did have them probated, but it appears they were in his own name, or in the names of the holders for his use.

Appellant, on the other hand, denies that he ever made any such purchase. He admits that there were negotiations between them in reference to some of the claims that were held by appellee, and as to their price, but insists that he was to purchase a piece of land at the administrator's sale, which he had previously sold to Proctor, and that the money for the claims was to be paid by the administrator to appellee, and that he did re-purchase the land at the administrator's sale, gave $900 for it, and paid the money to the administrator, and

expected him to pay it over to appellee. It is not disputed, that he made the purchase of the land for that sum, and that he paid it to the administrator.

Each party swears to the view of the case he presents, but appellee, although he frequently, in his testimony, speaks of appellant agreeing to pay for the claims, yet he does state positively that appellant agreed to pay him. He says that, "Burnham was to pay me, I suppose; I do not think he would not pay me particularly, or I do not think he mentioned any one." This does not look like he understood that there was a promise to pay him, or that the money was not to be paid to the administrator, as appellant swears it was to be. If there had been the sale claimed, it seems that the vendor would have had a promise to pay, and in such terms that would leave no doubt on the subject.

The administrator testified to the conversation between the parties, and, at first, says appellant was to pay appellee about $800 for the claims. On cross-examination, he says he thinks that there was no arrangement made that appellant should pay $800 for these claims, and then the land to be sold at administrator's sale, and bid off at a nominal sum, and appellee get the benefit of the sale; that there was no agreement as to what it should be bid off at, when sold. When the whole of the evidence is considered, it is by no means satisfactory. We can not comprehend why appellant would desire to purchase these claims, when the estate owed five or six thousand dollars more than could be paid, unless it was with the expectation that he could use them at their face in paying for the land. He seems to have been disposed to act fairly, and even liberally, with the estate. He could have filed a bill for a specific performance of the contract, and had the land sold, to pay him the purchase money, when, if, as he testifies, the land had depreciated, it is not probable that it would have sold for more than was due him on the purchase, and if so, the estate not being able to pay the balance, it would, in all probability, have lost all that had been paid.

Again, it seems that the administrator took steps to get appellant to visit Yates City, the residence of appellee. He seems, according to his own account of the matter, to have informed appellant that appellee had the claims, and to have taken appellant and introduced him to appellee. Now, why all of this activity on his part, unless he intended to induce appellant to purchase the claims, that they might be used in paying for the land?

As evidence of the understanding of appellant, he purchased the land, not for a nominal sum, and he then paid the money to the administrator. He surely could not, under the circumstances, have considered the purchase a speculation, when it was evident that he could have received back, of the money paid, but a comparatively small percentage.

It is urged that the bill prepared and sworn to by appellant against Bird, but never filed, was improperly admitted in evidence, because it is claimed that the relation of attorney and client existed between appellant and the attorney who drew it. We are inclined to hold that the statements made to the attorney, upon which the bill in chancery was based, were privileged. It was drawn in the name of appellant, and his name was signed to it by the attorney, and he signed the name of his firm to the bill. This unmistakably establishes the relation. These acts were deliberately done, and are not explained. A mere denial is but ignoring the legal effect of the acts. If that relation did not exist, then whose attorney was he? It will not be said that he was the attorney of appellee, and that this was but an unprofessional trick, to entrap appellant into a sworn statement of facts, that they might be used against him in this suit. If he was not appellant's attorney, the facts would seem to strongly point to the other theory. We are clearly of the opinion that the facts stated in the bill must be considered as privileged communications.

But if the relation of attorney could possibly be said not to have existed between appellant and the solicitor, still the

bill, under the circumstances it was drawn, is worth but little as evidence. Appellant says the bill was not all written, and it did not contain all the facts, when he signed and swore to the jurat that was attached to the bill. The solicitor says it only lacked the formal part when appellant swore to the jurat, and that, after he left, the formal portion and prayer were added. But his memory seems to be imperfect as to this transaction, and, in confirmation of his belief, he says that he was not in the habit of having such jurats sworn to, unless the facts were written out and read to the complainant. According, however, to the evidence on this point, the bill, as it now appears, was not prepared when the jurat was sworn to by appellant. It, then, leaves the matter in doubt as to whether appellant ever heard even the facts contained in this bill, read, and assented to their truth. He swears he did not, and we know the bill was not finished when he made the oath and left. It was, no doubt, reckless in him to make such an oath before the bill was completed and carefully read to or by him, and it is doubtless exceedingly loose practice, and should be discountenanced. Such a practice endangers the liberty of the weak, the reckless and the confiding, however truthful they may intend to be.

The attorney intrusted with the completion of the bill may, from accident or design, in such a case, involve the client in great trouble, and if the affidavit is acted on as true, great injustice may be perpetrated on others.

We, however, now come to the principal and turning point in the case, and that is, can this action be maintained, if the evidence produced by appellee be conceded to be true? It nowhere appears that he ever assigned, gave an order for, or otherwise gave appellant control of these claims, or offered to do so at any time before the suit was brought. To have completed the sale, some act should have been done giving appellant the power to use the name of appellee to enforce their collection, and to use the process of the law, if desired, for that purpose. The claims appear of record to belong to

appellee, and he has not given or tendered to appellant an order on the administrator for the money that may be ordered to be paid by him on these claims, nor has he, of record or otherwise, assigned or offered to assign them to appellant, and empowered him to collect them from the administrator. Appellee has the full legal right to release, assign, discharge, or otherwise dispose of these claims, whatever might be the equitable rights of appellant, if he has acquired any, as is claimed by appellee.

If it is sought to recover the value or the amount agreed to be paid, under the common counts, the property must have passed to the purchaser. Those counts, in their form, must state that the property was sold and delivered, and the averment is substantial, and must be proved, to warrant a recovery. This is elementary, but in this case there was no delivery, or what would be the only delivery that could be made, an assignment. It should have been executed, or such an act done as would have transferred appellee's title unconditionally to appellant, and for the want of such act, a recovery can not be sustained under the common counts.

This is not a case where an agreement has been fully performed, and nothing further remains to be done but the payment of the money by appellant. To complete the sale, if one was made, it remains for appellee to transfer his claims to appellant, so as to give him control over them. He has not performed his part of the contract. As well might the seller of personal property, who had sold it to be paid for on delivery, retain the property, and sue under the common counts for goods sold and delivered. It is true, he could not make a manual delivery of these claims, but he could have given an instrument vesting appellant with the control of them, which would have answered as, and been tantamount to, delivery.

If appellee elects to sue for and recover damages for a breach of the contract, then the count must be special; and, in such an action, it must appear that appellee had been ready

and willing, and must have offered to perform, or appellant must have done some act which dispensed with a performance. A defendant may dispense with an offer to perform by the plaintiff, by refusing to go on with the contract, or he may, in other modes, dispense with such an offer.

Where the suit is for the breach of the contract, the seller retains the title to the property. If he recovers, it is for the damages he has sustained by the breach of the contract, and they are usually measured by the difference between the value of the property at the time of delivery, and the price agreed to be paid under the contract.

From what has been said, it will be seen that this recovery can not be sustained under the common counts, and it is not claimed that it is under the special count, nor could it be, as that count contains an averment that appellee had performed the contract on his part, when the evidence shows he had not even offered to perform.

The judgment is reversed and the cause remanded.

*Judgment reversed.*