BENEFICIAL COMMERCIAL
CORPORATION

v.

RAILSERV MANAGEMENT CORPORA-
TION and American Railcar
Exchange, Inc.

v.

NORTH AMERICAN CAR
CORPORATION.

Civ. A. No. 82–3948.

United States District Court,
E.D. Pennsylvania.

April 20, 1983.

Edward I. Swichar, Philadelphia, Pa., for plaintiff.

William J. Brennan, King of Prussia, Pa., for Railserv Management Corp. and American Railcar Exchange, Inc.

Matthew J. Siembieda, Andrew Bershad, Philadelphia, Pa., for North American Car Corp.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court in this diversity action on a loan default are the plain-

tiff's motion for summary judgment and for dismissal of defendants' counterclaims, and third-party defendant's motion to dismiss the third-party complaint. For the reasons set out below, both plaintiff's and third-party defendant's motions will be granted.

## I. FACTS

On February 18, 1981, defendants Railserv Management Corporation ("Railserv") and American Railcar Exchange, Inc. ("American") executed a loan and security agreement with plaintiff Beneficial Commercial Corporation ("Beneficial"). Under this agreement, Railserv was advanced $1,472,062.00 for the purchase and refurbishment of 45 hopper railcars from Western Pacific Railroad. Thereafter, as contemplated by the parties, Railserv leased the railcars to the Allied Chemical Corporation for a one year period.

As one of its obligations under the loan agreement, Railserv was required to enter into a repurchase agreement with a company known as the North American Car Corporation ("NAC"). The agreement between Railserv and NAC provided that for consideration of $25,000.00 paid by Railserv to NAC, NAC agreed to purchase the 45 railcars from Railserv upon 60 days notice at a price of $35,000.00 per car. In this manner, it was guaranteed that Railserv would be able to liquidate the railcars if a new lease could not be secured when the Allied lease expired. Only defendant Railserv, and not defendant American, entered into the repurchase agreement with NAC.

As collateral for the loan, American and Railserv granted Beneficial a security interest in both the railcars and the proceeds from their lease agreement with Allied. As additional security for the loan, Railserv assigned to Beneficial Railserv's rights in the repurchase agreement with NAC.

Upon the conclusion of the Allied lease, Railserv was unable to obtain a new lessee and by letter dated March 31, 1982, notified NAC to purchase the railcars pursuant to the repurchase agreement. NAC refused to do so claiming that the notice provided in the letter was defective. A few weeks later, on June 30, 1982, defendants Railserv and American were required to make a balloon payment of $1,575,000.00 to Beneficial. Defendants were unable to make this payment and, consequently, Beneficial brought the present action to obtain: (1) a judgment in the amount of $1,575,000.00; and (2) an order to compel defendants to turn over the hopper cars representing collateral security. Beneficial also instituted a suit against NAC in the Circuit Court of Cook County, Illinois, in an effort to enforce the terms of the repurchase agreement between Railserv and NAC to which Beneficial is the assignee.

In response to Beneficial's complaint herein, Railserv and American have filed a counterclaim, seeking a judgment against Beneficial for any amount Beneficial fails to recover from NAC in the Illinois action, or in the alternative, a declaration that Beneficial should be required to accept return of the hopper railcars in full satisfaction of defendants' obligation. Railserv and American have also filed a third-party complaint against NAC based on a claim of breach of the repurchase agreement.

## II. DISCUSSION

### A. Motion to Dismiss the Third-Party Complaint

The crux of Railserv and American's third-party complaint is that NAC breached its obligation to repurchase the hopper cars after it received notice to do so from Railserv. Railserv and American contend that because of NAC's default they have been unable to repay Beneficial and, consequently, they seek judgment against NAC for any amounts Beneficial recovers against them. NAC submits, however, that this third-party claim of Railserv and American should be dismissed because they are not real parties in interest having assigned their claims to Beneficial. NAC asserts that the only proper plaintiff against it in a claim arising out of the repurchase agreement is Beneficial.[1] The Court agrees.

---

1. As previously mentioned, Beneficial is already suing NAC in Illinois. Beneficial cannot assert any claims against NAC in this Court

Rule 17(a) of the Federal Rules of Civil Procedure sets forth the basic principle governing who may bring an action by requiring that it be prosecuted "in the name of the real party in interest." The rule directs attention to whether the plaintiff in question possesses the right sought to be enforced. Generally, if a person has validly assigned all of his interest in a claim before an action is brought he is no longer the real party in interest. *Rodriguez v. Compass Shipping Co. Ltd.,* 617 F.2d 955 (2d Cir.1980), *aff'd* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). There is authority for the proposition that where there has been only a partial assignment, as in an assignment for security, both the assignor and the assignee have an interest in the claim and both are real parties in interest. *Diversa-Graphics v. Management & Technical Services Company,* 561 F.2d 725 (8th Cir.1977). *See generally* C. Wright & A. Miller, *Federal Practice and Procedure,* Civil § 1545 (1971). However, the Court is persuaded that the better rule as applied to the circumstances of this case was suggested in *Talmadge v. United States Shipping Board, Emergency Fleet Corp.,* 54 F.2d 240 (2d Cir.1932) (L. Hand, J.), wherein the court found that an unconditional assignee for collateral security is the only real party in interest. In *Talmadge,* checks due under a contract were assigned by a company to its financee (plaintiff therein), as security for a loan which enabled the company to complete the contract. The court stated that if the checks were dishonored then the proper party to enforce collection was not the company but the financer, as assignee of the checks for collateral security.

> Ordinarily of course a cheque is not payment, and that was the case here. Hence it might be argued that the company retained its right to enforce payment, in case the defendant dishonored the cheques, and that the assignment did not therefore divest it of all interest. Such an interpretation, while theoretically possible, appears to us to frustrate the obvious purpose of the parties. They meant to give the plaintiffs adequate security. . . . [t]he company having assigned its interest in the cheques as security, it would defeat the purpose to exclude the purely ancillary right to collect in case of their dishonor. Hence it seems reasonable to hold that the two passed together. If so, the company had no further interest in the payments, except as pledgor, and the plaintiffs might sue at law, as they did.

*Id.* at 243.

Applying the above principles to the present case, the real party in interest under the repurchase agreement is Beneficial. The Court makes no finding on whether the present assignment by Railserv was a partial assignment for security or a total and unconditional assignment for all purposes. In light of *Talmadge,* the result is the same under either interpretation of the assignment. Whether partial or complete, the purpose of the assignment was to give Beneficial adequate security in the form of liquidated proceeds in the event of a default by Railserv. This purpose is best served by allowing Beneficial to enforce any claims for breach of the repurchase agreement. Thus, in the Court's view, even if the assignment was only partial, Railserv's interest in NAC's performance was transmitted to Beneficial.

Any reservations this Court has about the result derived by applying the *Talmadge* rule to the present case in the face of what could be viewed as a partial assignment, are dispelled by Beneficial's attempt to enforce, in the Illinois action, the rights assigned to it by Railserv. Even if it could be said that Railserv retained an equitable interest in the repurchase agreement despite the assignment, that interest was extinguished once Railserv defaulted on the loan and Beneficial looked to its collateral security.[2]

---

since diversity is lacking as between Beneficial and NAC. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

**2.** The Court notes that at a hearing held in open Court on March 3, 1983, counsel for NAC represented that NAC was not attempting to assert in the Illinois action that Beneficial was

Railserv argues that paragraph 3 of a letter memorandum between Railserv and NAC dated January 31, 1981, which sets out the terms of the repurchase agreement, indicates that NAC had express notice of the assignment and expressly agreed that both Railserv and Beneficial would have the same rights against NAC in the event of a default by Railserv.

> NAC further understands and agrees that RAILSERV has previously pledged the Cars as security for a loan ("Loan") of money from Beneficial Leasing Group, Inc. or one of its subsidiaries ("Beneficial"). NAC agrees that if notified by Beneficial of RAILSERV's default under said Loan or the transfer of the rights herein, that Beneficial shall have the same rights and obligations as granted to RAILSERV hereunder.

The Court finds, however, that it cannot agree with Railserv's interpretation of this paragraph. The second sentence does not allow for a simultaneous holding by both Beneficial and Railserv of the interest in the repurchase agreement's enforcement. Rather it merely notifies NAC that if Railserv defaults, Beneficial shall hold the right of enforcement. Accordingly, NAC's motion to dismiss the third-party complaint will be granted.

### B. Plaintiff's Motion for Summary Judgment

█ Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Federal Laboratories, Inc. v. Barringer Research, Ltd.*, 696 F.2d 271 (3d Cir.1982). In this case, plaintiff Beneficial's motion is based on the terms of the loan and security agreement and an uncontroverted affidavit of plaintiff's vice president indicating that defendant has not paid plaintiff as required. The Court notes that although they have denied a default, defendants have admitted through the pleadings that they have not paid plaintiff the amount due. Third-Party Complaint ¶ 5. Since there is no dispute that pursuant to the loan and

security agreement defendants were unconditionally required to make a balloon payment to plaintiff of $1,575,000.00 on June 30, 1982, (Loan and Security Agreement ¶ 2(B)) and since, as just mentioned, there is no dispute that defendants have not paid plaintiff, plaintiff is entitled to summary judgment in his favor under both 13 Pa.C. S.A. § 9501 (Purdon 1982), and the terms of the security agreement. Section 9501(a) provides as follows:

> (a) Rights and remedies of secured party. —When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this chapter. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.... The rights and remedies referred to in this subsection are cumulative.

Additionally, the loan and security agreement states that:

> Then, so long as any such Default by Debtor shall be continuing, Lender may, at its option, by notice to Debtor, immediately declare the Note or any payment or payments thereunder to be due and payable and any and all other amounts payable by Debtor hereunder or any instrument executed pursuant hereto or in connection herewith, to be due and payable, whereupon all unpaid principal and interest and any other obligations due thereunder shall be so declared due and payable.... All remedies of Lender hereunder are cumulative, and are in addition to any other remedies provided for by law and may, to the extent permitted by law, be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Lender to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or shall such modify the terms of this Agreement, nor shall any single or partial exercise by Lender

not the real party in interest for purposes of

enforcing the repurchase agreement.

of any right or remedy preclude any other or further exercise of the same or any other right or remedy.

In view of the above authorities and the undisputed facts, summary judgment will be entered in plaintiff's favor. Defendants' counterclaim lacks merit and will be dismissed. First, it is not at all clear that defendants have standing to assert a claim against Beneficial for any amount that Beneficial fails to recover from NAC in the Illinois action, if less than the amount plaintiff seeks in this action. In any event even if standing could be said to exist, such a claim is, at this point in time, speculative and thus premature. Second, Beneficial may not be compelled to accept return of the railcars as collateral in full satisfaction of its claim against defendants. As the loan and security agreement, the statutory authority embodied in § 9501(a), and the case law make abundantly clear, Beneficial's remedies as a secured party faced with default are cumulative.[3]

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 20th day of April, 1983, IT IS ORDERED as follows:

1. The motion of third-party defendant North American Car Corporation to dismiss the third-party complaint is *granted;*

2. The motion of plaintiff Beneficial Commercial Corporation for summary judgment in its favor is *granted;*

3. Judgment is *entered* in favor of plaintiff Beneficial Commercial Corporation and against defendants Railserv Management Corporation and American Railcar Exchange, Inc. in the amount of $1,575,000.00;

4. Defendants Railserv Management Corporation and American Railcar Exchange, Inc. are *directed* to turn over to plaintiff within fifteen (15) days of the date of this Order, all collateral described as follows:

---

**3.** Under 13 Pa.C.S.A. § 9506, if Railserv satisfies Beneficial's judgment against it in full, the interest in the collateral, i.e., the repurchase agreement, would revert back to Railserv. Thereafter, Railserv could initiate litigation against NAC. However, if Beneficial chooses

forty-five (45) 100-ton aluminum covered hopper cars manufactured by Magor Car Company, Road numbers WP 11851–11859, inclusive; 11861–11870, inclusive; 11872–11877, inclusive; 11879–11891, inclusive; 11893–11898, inclusive; and 11900, renumbered RSVX 301–345;

5. The counterclaim of defendants Railserv Management Corporation and American Railcar Exchange, Inc. is *dismissed.*

to pursue the collateral before executing on the judgment against Railserv, the amount Beneficial recovers from NAC would be credited in Railserv's favor on the judgment Beneficial holds against it. 13 Pa.C.S.A. § 9504.