CROWN LIFE INSURANCE
COMPANY, Plaintiff,

v.

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO, not
personally or individually, but as Trustee under a Trust Agreement dated January 24, 1986, and known as Trust No.
66542; Tri–Centers Properties, Ltd., an
Illinois limited partnership, and Earle
W. Aronson, Defendants.

TRI–CENTERS PROPERTIES,
LTD., etc., Cross–Plaintiff,

v.

Earle W. ARONSON, Cross–Defendant.

No. 92 C 4802.

United States District Court,
N.D. Illinois, E.D.

July 30, 1993.

Michael B. Weininger, Jonathan D. Sherman, Katz, Randall & Weinberg, Chicago, IL, for plaintiff.

Nathan H. Dardick, Richard C. Jones, Jr., Stuart Michael Gimbel, Dardick & Denlow, Chicago, IL, for Tri–Center Properties, Ltd.

Gary Campbell, Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, Naperville, IL, Donald L. Johnson, Tobin Marais Richter, Law Offices of Tobin M. Richter, Chicago, IL, for Earle W. Aronson.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Three motions are now before the court. First, defendant and cross-plaintiff Tri–Centers Properties, Ltd. (Tri–Centers) moves to strike defendant and cross-defendant Earle Aronson's second and third affirmative defenses to Tri–Centers' cross-claim. Second, plaintiff Crown Life Insurance Company (Crown Life) moves to substitute itself as the real party in interest in Tri–Centers' cross-claim. Finally, Tri–Centers moves to prove up damages and for final judgment against Aronson.

## BACKGROUND

Most of the relevant facts are laid out in our memorandum and order of May 11, 1993, in which this court granted Tri–Centers' motion for summary judgment and established Aronson's liability with respect to the cross-claim. For the sake of clarity, several facts are repeated here.

This case concerns the financing of three shopping plazas (the properties), two located in Bolingbrook, Illinois and a third in Romeoville, Illinois. In 1986 the properties were held in trust by the American National Bank and Trust Company of Chicago (the trust). Tri–Centers possessed full power of direction over the trust and was its sole beneficiary. In May 1986 Crown Life issued a loan to the trust in the amount of $2,812,500 and secured the loan with a mortgage on the properties. The loan was secured with four other documents as well, including a collateral assignment of Tri–Centers' beneficial interest in the trust. Until recently this court was unaware of the collateral assignment because it was mentioned for the first time only in the latest round of pleadings, but it has proved to be one of the most significant documents in the case. In the collateral assignment Tri–Centers agreed to the following terms:

> Debtor [Tri–Centers] assigns, grants, sells, transfers and sets over unto Secured Party [Crown Life] all of its rights, titles, powers, privileges, property and beneficial interest (including the rents, issues and profits of said property and the avails and proceeds thereof and the power of direction thereto) in and to [the entire beneficial interest of the trust].

Tri–Centers also agreed not to sell or transfer the properties without the prior written consent of Crown Life.

Five years later the trust sold the properties to Aronson for $4,300,000, payable in installments. Before completing the sale, Tri–Centers received Crown Life's written consent, for which Crown Life charged a $25,000 fee.

In May 1992, Aronson ceased making the installment payments he owed the trust pursuant to the purchase contract. The trust sent Aronson a notice of default in late June

1992. That notice was followed in early July 1992 by a warning that Aronson's rights under the contract would be forfeited if he did not pay the amount owed by August 20, 1992.

Meanwhile, in June 1992, the trust failed to pay the amounts it owed to Crown Life pursuant to their loan agreement. Crown Life accelerated the entire unpaid principal balance on the loan and in July 1992 filed suit against the trust, Tri–Centers and Aronson demanding foreclosure on the properties and other relief.

On September 17, 1992, Tri–Centers filed both an answer to Crown Life's complaint and a cross-claim against Aronson. As that cross-claim is now formulated Tri–Centers seeks to recover damages from Aronson under the terms of the purchase contract. On December 22, 1992, this court entered a judgment for foreclosure and sale of the properties, thereby awarding to Crown Life the primary relief that it sought. The sale was held on May 6, 1993, and the successful bidder—Crown Life—obtained the properties for $2.2 million. Although a deficiency in the amount of $1,126,000 remained against the trust, this court believed that the only major issue left, for all practical purposes, was whether Tri–Centers would receive anything more from Aronson. On May 11, 1993, this court granted Tri–Centers' motion for summary judgment, finding Aronson liable under the contract.

This court's expectation that the case could be brought to a rapid end proved to be premature. Aronson has submitted two additional affirmative defenses. According to Aronson, both the terms of the contract and applicable Illinois law precluded Tri–Centers from seeking relief against him once the properties had been sold pursuant to this court's foreclosure order. The case is complicated further by Crown Life's motion to substitute itself as the real party in interest in the cross-claim. If its motion were successful, then Crown Life would be able to cure the remaining deficiency against the trust by availing itself of the proceeds that Tri–Centers hopes to obtain from Aronson.

## DISCUSSION

The court turns first to Tri–Centers' motion to strike Aronson's second and third defenses. (The first affirmative defense already has been rejected.) The court assumes, for the sake of argument, that the new defenses were timely filed.

■ Aronson's second affirmative defense is that Tri–Centers has no right to collect from him pursuant to the purchase agreement because under 735 ILCS 5/15–1402, Tri–Centers' "interest in the mortgaged real estate" ceased to exist once this court confirmed the sale of the real estate pursuant to the judgment of foreclosure. The problem with that defense, as Tri–Centers points out, is that Tri–Centers is not claiming an interest in the real estate. Rather, it seeks to collect damages for breach of contract and nothing in the common law or in the statute cited by Aronson prevents this court from awarding that remedy. Aronson's third affirmative defense is based on the language of the purchase agreement itself, which states that Tri–Centers shall convey good title to the properties if Aronson "shall first make all the payments and perform all the covenants and agreements required to be made." Tri–Centers admits that it no longer can perform its obligations under the contract, but a material breach of a contract by one party will justify nonperformance by the other. *Oakleaf of Illinois v. Oakleaf & Associates*, 173 Ill.App.3d 637, 123 Ill.Dec. 288, 295, 527 N.E.2d 926, 933 (1988), *appeal dismissed*, 123 Ill.2d 560, 128 Ill.Dec. 892, 535 N.E.2d 403 (1988); *Borys v. Rudd*, 207 Ill.App.3d 610, 152 Ill.Dec. 623, 628, 566 N.E.2d 310, 315 (1990), *appeal denied*, 139 Ill.2d 593, 159 Ill.Dec. 104, 575 N.E.2d 911 (1991); *Niemoth v. Kohls*, 171 Ill.App.3d 54, 121 Ill.Dec. 37, 48, 524 N.E.2d 1085, 1096 (1988), *appeal denied*, 122 Ill.2d 578, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988). Since Aronson breached the contract first when he failed to make the installment payments he owed, Tri–Centers' inability to produce good title will not relieve Aronson from having to pay damages.

■ With that settled, the court now can turn to Crown Life's motion to substitute itself as the real party in interest. The court

would note at the outset that it does not believe that Crown Life can be the *only* party with an interest in collecting damages from Aronson. *Cf., Beneficial Commercial Corp. v. Railserv Management Corp.*, 563 F.Supp. 114 (E.D.Pa.1983), *aff'd*, 729 F.2d 1445 (3rd Cir.1984). As Crown Life concedes, it seeks to collect damages from Aronson only in the amount necessary to satisfy the deficiency stemming from the mortgage issued to the trust. Crown Life has no claim on any damages Tri–Centers might receive in excess of what is needed to cure the deficiency. Thus, at most, Crown Life should be *added* as a party in interest. *See* Charles Wright and Arthur Miller, *Federal Practice and Procedure*, § 1545 at 351–53.

Crown Life's strongest basis for becoming a party in interest to the cross-claim is the collateral agreement entered into by Tri–Centers. The agreement assigns to Crown Life all of Tri–Centers' "rights, titles, powers, privileges, property and beneficial interest (including the rents, issues and profits of said property and the avails and proceeds thereof and the power of direction thereto) in and to" the entire beneficial interest of the trust. Tri–Centers has not denied that damages collected from Aronson would fall into the category of "avails and proceeds" of the properties[1], but it argues that Crown Life waived its rights with respect to the collateral agreement when it (1) accepted $25,000 in exchange for its written approval of the sale of the properties to Aronson and (2) authorized Tri–Centers to collect installment payments directly from the purchaser. Tri–Centers' characterizations of Crown Life's actions are not very persuasive. The collateral agreement clearly gave Crown Life a right of recourse against whatever Tri–Centers gained from selling the properties, and Crown Life's decision to approve a particular sale and a particular method of payment was not inconsistent with its retaining of its security interest in the proceeds from the sale.

■ The only significant argument remaining against adding Crown Life as a party in interest is that its motion under Fed. R.Civ.P. 17(a) is too late. Although Crown Life could have filed the motion as soon as Tri–Centers filed its amended cross-claim, it did not do so until after Tri–Centers had fought for and obtained summary judgment. The court agrees with Tri–Centers that it is somewhat unfair for Crown Life to take all of Tri–Centers' winnings without doing any of the work necessary to obtain them but, given that there were no proceeds for Crown Life to seek, and given that Crown Life did not know until after the foreclosure sale that there would be a deficiency, the court believes that Crown Life's delay should be excused.

■ That leaves the issue of damages. Tri–Centers correctly states the general principle that a non-breaching party to a contract may be entitled to the profits it would have gained had the breaching party performed. The fact that this case involves a real estate contract makes no difference. *See Spangler v. Holthusen*, 61 Ill.App.3d 74, 18 Ill.Dec. 840, 845, 378 N.E.2d 304, 309 (1978). Aronson would take comfort in the rule that lost profits are available only if both parties contemplated, at the time the contract was formed, that such profits would be lost if the contract were breached. *Id.* *See also Milex Products, Inc. v. Alra Laboratories*, 237 Ill.App.3d 177, 177 Ill.Dec. 852, 861, 603 N.E.2d 1226, 1235 (1992), *appeal denied* 149 Ill.2d 651, 183 Ill.Dec. 863, 612 N.E.2d 515 (1993); *Sheppard v. Fagan*, 94 Ill.App.3d 290, 49 Ill.Dec. 856, 859, 418 N.E.2d 876, 879 (1981). But the cases Aronson cites do not involve the kind of facts at issue here, where profits were lost because the seller (the trust) defaulted on a loan after the buyer (Aronson) failed to perform. Any reasonable buyer of property should know that sellers are likely to have mortgages, and Aronson cannot plead ignorance of that basic characteristic of the real estate business.

The fact that Crown Life is also a party in interest adds an extra dimension to the damages issue. Tri–Centers suggests that it would be made whole—in the sense that it

---

1. Tri–Centers does dispute the applicability of the "rents, issues and profits" provision of the collateral agreement to damages obtained from Aronson, but, because the applicability of the "avails and proceeds" provision is uncontested, the court need not assess the parties arguments concerning the meaning of "issues and profits."

would recover its lost profits—if Aronson paid it the difference between the amount Tri–Centers would have had to pay Crown Life and the amount Aronson was supposed to pay Tri–Centers. That calculation appears to be premised on the fact that Tri–Centers has not had to pay anything to Crown Life. Because of the collateral agreement between Tri–Centers and Crown Life, however, Crown Life is entitled to any damage award Tri–Centers obtains, up to the point that the trust's deficiency is cured. Thus, as Tri–Centers hints in a rather obscure footnote, it really would not be made whole unless Aronson paid the difference between the price promised in the installment contract and the price paid at the foreclosure sale. Ironically, it is Aronson, not Tri–Centers, who most forcefully argues that the traditional measure of damages for breach of a real estate contract is the difference between the purchase price and the market value of the land on the date of breach. *See Sheppard,* 49 Ill.Dec. at 859, 418 N.E.2d at 879 (Ill.App.1981). The price paid at a fair forfeiture sale is presumptively considered to be the market value. *Kemp v. Gannett,* 50 Ill.App.3d 429, 8 Ill.Dec. 726, 727, 365 N.E.2d 1112, 1113 (1977). Therefore, if Aronson pays the amount dictated by the formula that Aronson has submitted, then Tri–Centers will be forced to turn over whatever is necessary to cure the trust's deficiency, but Tri–Centers still will receive its anticipated profits under the installment contract. Accordingly, it is ordered that Aronson pay the difference between the amount due on the installment contract and the amount paid at the foreclosure sale, plus any other consequential damages incurred by Tri–Centers.

### CONCLUSION

Tri–Centers' motion to strike Aronson's remaining affirmative defenses is granted. Crown Life's motion to substitute is granted in part and denied in part, and Crown Life is added to the cross-claim as a party in interest. Tri–Centers' motion to prove up damages is granted.