ROGER D. QUEST *et al.*, Plaintiffs, *v.* JAMES C. ROBERTSON *et al.*, Defendants and Third-Party Plaintiffs-Appellees.—(LARRY G. ADAMSON *et al.*, Third-Party Defendants-Appellants.)

Second District   No. 77-608

Opinion filed April 23, 1979.

Russell L. Willis, Jr., of O'Neal & Willis, of Rochelle, for appellants.

Fearer & Nye, of Oregon, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This case involves the question of whether or not the assignee of a vendee's interest under an installment contract for the purchase of realty also assumed the duties, obligations or liabilities which the contract imposed upon the assignor-vendee.

James C. and Glenna I. Robertson entered into an installment contract for the purchase of certain realty (a car wash) from Roger D. and Diana L. Quest. The contract contained the usual provision that it would "inure to the benefit and be binding upon the heirs, executors, administrators, successors and assigns of the seller and buyer." The Robertsons subsequently assigned their contractual interest to Larry G. and Joann K. Adamson. The Adamsons defaulted by failing to make the required payments and the Quests sued the Robertsons for breach of contract. The Robertsons then filed a third-party complaint against the Adamsons. The third-party complaint, as amended, alleged the assignment to the Adamsons and that the Adamsons had "agreed to assume all obligations" under the contract. After alleging the failure to make payments required by this agreement, the third-party complaint prayed "for relief under the contract and assignment including * * * the balance due under the contract and assignment * * * attorneys fees and court costs."

The Quests and Robertsons entered into a settlement and the matter proceeded to trial on the third-party action alone. After a bench trial, the court found for the Robertsons in the amount of $10,456.32 in damages representing the unrecovered balance due on the installment contract, $118.15 in costs and $3,500 in attorney fees. The Adamsons appeal.

The assignment of the Robertsons' interest to the Adamsons was embodied by a short form, which provided that "For and in consideration of One ($1.00) Dollar and for other good and valuable considerations," the Robertsons "hereby assign, transfer and set over and quit claim unto" the Adamsons "all of [their] right, title and interest in and to the above contract and the premises therein described * * *." This brief document made no mention of any assumption of duty by the Adamsons. The assignment was accompanied by a deed quitclaiming the Robertsons' interest in the subject property to the Adamsons. Neither of these documents contained anything expressly indicating that the Adamsons were assuming the obligation to make the payments required under the contract.

The assignment and quitclaim deed had been prepared by the Robertsons' attorney, Mr. Nye. He testified that at the time of the transaction, he thought that the legal effect of these instruments was to transfer the obligations under the installment contract to the Adamsons, along with its privileges. Nye stated that the Quests, the Robertsons and the Adamsons met at his office concerning the proposed transaction, at which time the contract was reviewed and what Nye described as the "general law" of the "process of assignment" was explained. According to Nye, the Quests were concerned about the assignment and "it was discussed that the Adamsons were responsible for making payments under the contract." The Quests were told that their position would actually be improved since "Mr. and Mrs. Adamson would be assuming the responsibilities under the agreement for deed." Under cross-examination, when asked if there was any language in the assignment which stated that the Adamsons assumed the obligations under the installment contract, Nye responded, "[I]t was my thought that there was. That's a matter of legal interpretation I guess."

Mr. Adamson testified that he did not agree to assume the Robertsons' duties and liabilities under the installment contract. There was no testimony that either of the Adamsons expressly agreed to such an assumption of duty, or verbally concurred in Mr. Nye's explanation of the legal effect of the assignment. However, the record would support a finding that, after listening to Mr. Nye's explanation, the Adamsons went ahead and closed the transaction without objecting.

Did the assignment render the Adamsons liable for any balance due on the installment contract? The Adamsons argue that they are not liable, noting that nowhere in the record is there any evidence that they expressly agreed to assume the affirmative duty of making the payments required by the installment contract. The Robertsons respond that the Adamsons impliedly agreed to assume the duties and liabilities of the installment contract when they accepted the assignment after Nye's statement at closing that the Adamsons would thereby be assuming

the responsibility for making payments. The Robertsons buttress this position by citing the general view of the American Law Institute, as expressed in section 160 of the Restatement (Second) of Contracts (1957), that an assignor is presumed to have delegated performance of his duties to the assignee and the assignee is presumed to have promised to perform such duties, unless the circumstances indicate to the contrary.

■■■ While a close question is presented, we are on balance convinced that the trial court erred in holding that the Adamsons assumed the duty of making the payments required by the installment contract. At the outset, we note that under Illinois law an assignee's acceptance of an assignment of a contract, without any express assumption of the obligation of the contract, does not bind the assignee merely because the contract provided that it was binding upon the assigns of the respective parties. (*Kneberg v. H. L. Green Co.* (7th Cir. 1937), 89 F.2d 100, 104.) Instead, it is the rule in this State, at least in regard to contracts for the purchase of realty, that:

> "An assignee does not become liable on an executory contract of the assignor unless by his contract he assumes such liability, and the mere assignment of an interest under a contract will not render the assignee personally liable for moneys thereafter to become due." (*Lunt v. Lorscheider* (1918), 285 Ill. 589, 593.)

Thus, a mere "naked assignment" (285 Ill. 589, 593) does not render the assignee liable on an executory contract for the purchase of realty. Yet, the written assignment underlying the judgment which the trial court entered against the Adamsons was obviously such a "naked assignment," lacking any provision indicating that by accepting the assignment the Adamsons were assuming the duty of paying the balance due on the contract.

Of course, from the testimony of Attorney Nye, it is apparent that he thought that the "form" assignment he used sufficed to effect an assumption by the Adamsons of the duty of making the payments required by the contract. On appeal, the Robertsons have attached a great deal of importance to Nye's testimony that the Adamsons did not object in any way after Nye expressed his view of the effect of the assignment in their presence. However, Nye was acting as counsel for the Robertsons and not for the Adamsons, and we do not believe that the Adamsons were bound by Nye's opinion of the legal effect of the assignment, whether they took exception to that opinion or not.

Instead, it is a well-established principle that a contract will be construed most strongly against the party who prepared it, since he chose the words that were used and created any ambiguity. (*E.g., Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 586; *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1977), 47 Ill. App. 3d 699, 704.) In this case, Nye was charged by his clients with the task of drafting any documents

necessary to carry out the intention of the parties. In the absence of a provision whereby the Adamsons assumed the duty of paying the remaining balance on the installment contract in the assignment, the trial court erred in placing the construction urged by the Robertsons upon the transaction by treating the assignment as if it contained such an assumption of duty by the assignee.

It is true that section 160 of the American Law Institute's Restatement (Second) of Contracts (1957) provides that an assignee's acceptance of a general assignment "operates as a promise to the assignor to perform the assignor's unperformed duties" unless "the language or the circumstances indicate the contrary." This view of the law has not been universally accepted (Corbin on Contracts §906 (1952)), although Corbin regards it as "reasonable." However, we need not grapple with the merits of section 160 of the Restatement (Second) of Contracts (1957), since the section is not applicable to assignments of a vendee's interests under a contract for the purchase of land. As noted in the Restatement:

> "Where the purchaser under a land contract assigns his rights, the assignment has commonly been treated like a sale of land 'subject to' a mortgage. In this view acceptance of the assignment does not amount to an assumption of the assignor's duties unless the contract of assignment so provides * * *. A provision in the land contract that it will bind the 'assigns' of the parties does not change this result."

For this reason, the Reporters do not take the position that the cited provision of section 160 of the Restatement applies to an assignment by a purchaser under a land contract. Restatement (Second) of Contracts §160 (1957).

In sum, there was no evidence in this case which would suffice to support a holding that the Adamsons ever assumed the duty of paying the balance due on the installment contract. Further, there was no evidence of any agreement wherein the Adamsons agreed to pay the Robertsons' attorney fees. Thus, although the Adamsons' failure to make the payments specified by the installment contract led to the termination of their interest in the subject realty, it did not give rise to any personal liability to the Robertsons for any balance due on the contract after the disposition of the property. On this record, we hold that the judgment of the trial court was therefore against the manifest weight of the evidence and must be reversed.

Judgment reversed.

GUILD, P. J., and WOODWARD, J., concur.