DANIEL L. SHEPPARD *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* CAROLE L. FAGAN, d/b/a C-L-F Realtors, Defendant and Counterplaintiff-Appellant.

First District (4th Division)    No. 80-51

Opinion filed March 12, 1981.

Robert D. Banzuly, of Chicago, for appellant.

Driscoll & Driscoll, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Carole L. Fagan, d/b/a C-L-F Realtors appeals from a $10,000 judgment entered in favor of Daniel L. Sheppard and Kathleen M. Sheppard in a breach of contract action. She also appeals from a judgment entered in favor of the Sheppards and against her on her counterclaim based on an alleged breach of contract. Fagan questions the elements of damages, rulings on the evidence, the manifest weight of the evidence and instructions given and refused.

The Sheppards were the owners of a home in the village of Schaumburg. Fagan is a real estate broker. On May 26, 1978, the parties entered into two separate agreements. In one, the Cooperative Selling Contract, Fagan was given an exclusive listing on the home with a sales price of $85,900. The real estate commission was stated to be 7% on the first $50,000 and 6% thereafter. The same day the parties entered into another contract, the guarantee to purchase agreement. The second contract provided that if the property was not sold by September 20, 1978, Fagan agreed to purchase the property for a net price of $77,520. From the evidence it appears that the gross price was $83,000. The contracts provide, as far as is pertinent to this appeal, that the seller shall cooperate fully with the broker, the listing office shall have a key to the property, the property must be properly maintained and the property must be available for showing at all times.

Two and a half months after the agreements were entered into, on August 8, 1978, an attorney for Fagan sent a note to the Sheppards stating that Fagan was cancelling the guarantee to purchase agreement because the agreement required that the listing office shall have a key and the key to the property was recently withdrawn and also that the Sheppards were to make the property available for showing at all times and the property was not always available therefore, hindering a sale by Fagan.

Fagan did not sell the house by September 20, 1978. She did not buy the house herself. The Sheppards were not able to sell the house until July 19, 1979. They received $79,500 for the home.

Kathleen Sheppard testified that she was never asked to have a key placed with C-L-F Realtors. Daniel Sheppard testified that he had been told by Emalee Andre, the sales associate of Fagan who was the listing agent for the Sheppards' house, that not leaving a key with the office would not present a problem. Andre testified that on several occasions during June, July and August she asked Kathleen Sheppard for a key to the house and told her that the house could not be shown because the broker did not have a key to it. She never told the Sheppards that they did

not have to provide her with a key. She stated that she asked the Sheppards for a key on several occasions but when Kathleen Sheppard told her that she would be at home all the time except on Tuesdays she accepted that and did not press further to get the key. Approximately 25 people saw the plaintiffs' home between May 26 and August 8. Andre testified that that was quite a few people to see the house in that space of time. There were approximately three or four open house showings during that time.

The Sheppards presented evidence of damages totalling $11,325. This figure represents: $4500 for tax and interest expenses incurred between September 20, 1978, and July 19, 1979; $2300 for an interim loan payment made on a house in Wisconsin; $605 for incidental expenses such as closing costs and attorneys' fees; the $3500 difference between $79,500, the price they received for their home, and $83,000, the gross price for which they alleged Fagan was liable under the contract; and $420 for utilities paid from the time of the breach until late December at which time utility payments stopped because the home was rented out. The $4500 figure for taxes and interest payments is subject to some dispute and will be considered subsequently.

Fagan makes several contentions on the issue of damages. She states that the proper measure of damages is the difference between the contract price and the market price at the date of the breach of contract. She cites as authority *Burnham v. Roberts* (1873), 70 Ill. 19, and *Dickson v. Turner* (1909), 149 Ill. App. 394. From that premise Fagan argues that since that is the proper measure of damages the court was in error in admitting evidence of other damages.

■■■ We agree that a proper measure of the element of damages for the real estate itself is the difference between the contract price and the market price on the date of the breach. However, there is nothing in either of the cases cited to suggest that this is the only element of damages. The general rule on contract damages is that they are recoverable as they may fairly and reasonably be considered to have arisen naturally from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties as they made the contract. (*Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 11 N.E.2d 361.) Fagan does not argue here that these items were not within the contemplation of the parties. There was no error in admitting evidence of other damages.

Fagan asserts that there are no damages on the sale because Fagan agreed to purchase the property for $77,520 and the actual sales price of the house was $79,500. The contract in evidence does indicate that the *net* price Fagan was to pay the Sheppards was $77,520. The testimony of

Fagan at trial was that the *gross* price was to be $83,000. The real estate commission under the terms of the contract was $5480 which when subtracted from the gross price would produce the net figure of $77,520 as stated in the contract. Consequently, there was evidence that the Sheppards sustained $3500 damages, the difference between the gross sales price in the contract of $83,000 and the gross actual sales price of $79,500. Fagan submitted an instruction in conformance with her views that she expresses here and the court properly denied that instruction.

Fagan also contends that the jury verdict exceeds the losses to the sellers as substantiated by the evidence at trial. We believe that Fagan is partially correct in her contention. In Fagan's calculation there are no damages because she contends the house was sold for more than the contract price. As we indicated before we cannot accept that contention. She further contends that the plaintiff's calculation of interest and taxes is $2100 whereas the plaintiff contends that it is $4500. The reason for the dispute centers around income from rental to offset the interest and tax payments. The Sheppards did indeed testify that interest and tax expenses were $4500. However, they further testified that after offsetting the rental income the damages were only $2100. We believe this figure must be accepted as conclusive. The plaintiffs' total damage claim is $11,325 when the interest and tax expense of $4500 is used. With the $2100 interest and tax expenses instead of $4500 the total damages are $8925. The jury verdict was $10,000. (The plaintiff describes the difference between the total amount of damages of $11,325 based on their calculation and the verdict as the jury taking into account rental income.) The judgment must be reduced to the maximum amount of damages actually proved by the plaintiff of $8925.

Fagan asserts that the court was in error in admitting the testimony of Daniel Sheppard of the conversation he had with Andre where he testified that Andre said that not leaving a key with the office would not present a problem.

■■ Fagan cites *Lockwood v. Goldman* (1952), 345 Ill. App. 324, 102 N.E.2d 828, where the court said that the law is well settled that when the parties reduce their agreement to writing all prior negotiations leading up to the execution of the writing are merged in the writing and parol evidence is not admissible to explain, contradict, enlarge or modify the writing as it exists when executed. As the plaintiff points out, however, the testimony here was not offered to show the parties' intention prior to entering into the contract as was the situation in the *Lockwood* case. The purpose of the admission of the testimony is to show that the provision of the contract concerning the key has been waived by the conduct of the parties. In *Anderson v. Creighton* (1975), 26 Ill. App. 3d 375, 325 N.E.2d

85, the court stated that parol evidence is not admissible to modify or alter a written contract; however, a party for whose benefit a provision is inserted may waive such a term and the waiver may be shown by parol evidence. We believe the testimony here was properly admitted on the issue of waiver.

■■ The defendant's final contention concerns the instructions submitted by the plaintiff and given to the jury over Fagan's objection. One instruction informed the jury that if they found that after signing the contract the parties had "agreed to modify any term of the contract, that subsequent modification was an effective change of the contract." Also, the jury was instructed that if a party "for whose benefit a condition exists elects to proceed with performance under the contract, he waives any right to claim a violation of the condition." Fagan first asserts that there is no evidence on either of these propositions. The testimony of both the Sheppards and the testimony on the necessity for a key is evidence on both subjects. She further argues that the instructions were technical and argumentative. In our judgment they were as clear and concise as might be expected.

Fagan asserts but does not specifically argue that the verdict was against the manifest weight of the evidence. We believe that the matter was completely within the realm of the jury.

No separate argument is made by Fagan on her appeal on the counterclaim. For the reasons stated the judgment of the circuit court in favor of Daniel L. Sheppard and Kathleen M. Sheppard in the amount of $10,000 is vacated and the circuit court is ordered to enter judgment in the amount of $8925. The judgment in favor of the Sheppards on the counterclaim is affirmed.

Vacated and remanded with directions in part.

Affirmed in part.

ROMITI, P. J., and JOHNSON, J., concur.