R. PETER PELZ *et al.*, Plaintiffs-Appellees, v. STREATOR NATIONAL BANK, Defendant-Appellant.

Third District    No. 3—85—0487

Opinion filed July 28, 1986.

Walter L. Stodd, of M. G. Gulo & Associates, Ltd., of Streator, for appellant.

Walter D. Boyle and Roger C. Bolin, both of Boyle, Goldsmith, Shore & Bolin, of Hennepin, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Defendant, Streator National Bank, appeals from summary judgment entered by the circuit court of Marshall County in favor of plaintiffs, R. Peter and Carol Pelz, for breach-of-contract damages and attorney fees and costs totaling $39,810.26.

Plaintiffs sued to recover the balance due on an installment contract for the sale of commercial property located in Toluca, Illinois. An agreement for warranty deed was entered into on May 1, 1980, between plaintiffs, as sellers, and Virginia and Merlin Elliott, as buyers. The agreement recites that the purchase price is $30,000, payable by a down payment of $5,000 and in monthly installments thereafter of $358.68. Standard terms for default and acceleration of the balance

due upon default at the seller's option are set forth. In the event of litigation upon default, the seller is entitled to recover costs of suit and reasonable attorney fees. The parties' rights of assignment also appear in standard form, allowing the buyers the right to assign their interest only upon the sellers' written consent. The agreement is binding on the parties' "heirs, devisees, legatees, personal representatives, successors and assigns."

Defendant bank was the assignee of the Elliotts' interest pursuant to an assignment dated October 13, 1981. Plaintiffs' signed consent to assignment appears on the last page of the four-page assignment document. The document, prepared by counsel for the bank and duly recorded by the defendant bank, is the primary source of the dispute before us. It states, in pertinent part:

"[W]hereas the undersigned, Merlin Elliot [sic] and Virginia Elliot [sic], desire to assign their Buyers' interest in said Installment Contract to the Streator National Bank, Streator, Illinois, for financing purposes,

NOW, THEREFORE, in consideration of a loan which the Streator National Bank, Streator, Illinois, has made to the Buyers in the above described Installment Contract, and in consideration of all future loans to be made to them by said Streator National Bank, Streator, Illinois, and in consideration of other good and valuable consideration received by said Buyers from the Streator National Bank, Streator, Illinois, receipt of which is hereby acknowledged, the said Merlin Elliot [sic] and Virginia Elliot [sic] hereby sell, convey, assign, and set over to the Streator National Bank, Streator, Illinois, all their right, title and interest as Buyers in the above described Installment Contract with R. Peter Pelz and Carol Pelz, this assignment to remain in full force and effect until expressly canceled in writing by said Streator National Bank, Streator, Illinois.

This assignment is made for security purposes only and in the event Merlin Elliott and Virginia Elliott shall repay the loan or loans from the Streator National Bank, Streator, Illinois, for which this assignment is given as security, according to the terms of said loan or loans, then, when the terms of said loan or loans have been fully satisfied by said borrowers, the said Streator National Bank, Streator, Illinois, shall release this assignment in writing. In the event the said Merlin Elliott and Virginia Elliott shall default in any of the payments due from them to the Streator National Bank, Streator, Illinois, on the loan or loans hereinabove referred to, then the Streator National Bank,

Streator, Illinois, may deem this assignment to be in full force and effect and consider itself as the vendee under said Installment Contract with R. Peter Pelz and Carol Pelz, hereinabove described. It being understood that the deed contemplated by said Installment Contract has been executed and is now held in escrow, in order to fully protect the Streator National Bank, Streator, Illinois, assignee under this instrument Merlin Elliott and Virginia Elliot [*sic*] have made, executed, acknowledged and delivered to the Streator National Bank, Streator, Illinois, together with this assignment, a warranty deed conveying to the Streator National Bank, Streator, Illinois, the above described real estate, and in the event the deed contemplated by the aforesaid Installment Contract is delivered while this assignment is still outstanding, naming Merlin Elliot [*sic*] and Virginia Elliot [*sic*], as grantees, the Streator National Bank, Streator, Illinois, may use the warranty deed last hereinabove referred to from the said Merlin Elliot [*sic*] and Virginia Elliot [*sic*] to convey the title to the Streator National Bank, Streator, Illinois, in fulfillment of this assignment.

The purpose of the aforesaid arrangement is simply to render the Streator National Bank, Streator, Illinois, secure in its loan or loans to the said Merlin Elliot [*sic*] and Virginia Elliot [*sic*] and to place the Streator National Bank, Streator, Illinois, in position to take title to the above described real estate if necessary in the event of default in the repayment of said loans.

In the event the said Merlin Elliot [*sic*] and Virginia Elliot [*sic*] shall fail to make the payments due on the aforesaid Installment Contract as said payments become due, or shall otherwise fail to perform any of the covenants entered into by them in said Installment Contract dated May 1, 1980, such as providing necessary insurance coverage, paying taxes, etc., so that a default in the terms of said Installment Contract dated May 1, 1980, appears imminent, the Streator National Bank, Streator, Illinois, may make the installment payments provided in said Installment Contract to R. Peter Pelz and Carol Pelz, and may provide insurance, pay taxes, or take any other steps necessary to fulfil the Buyers' obligations under said Installment Contract dated May 1, 1980, in order to keep said Installment Contract in full force and effect, and in the event the Streator National Bank, Streator, Illinois, shall pay any such installments, or make any expenditures for insurance, taxes, or otherwise, to keep said Installment Contract dated May 1, 1980, in full force and effect,

Merlin Elliot [*sic*] and Virginia Elliot [*sic*] shall immediately reimburse the Streator National Bank, Streator, Illinois, for such expenditures, upon demand, and upon failure so to do, the Streator National Bank, Streator, Illinois, shall be deemed the vendee under said Installment Contract dated May 1, 1980, and if and when the deed contemplated by said Installment Contract and now held in escrow is delivered, the Streator National Bank, Streator, Illinois, may use the above described warranty deed from Merlin Elliot [*sic*] and Virginia Elliot [*sic*] to complete the conveyance of the title to said Streator National Bank, Streator, Illinois."

The Elliotts made their last installment payment to the plaintiffs in November 1982. They filed a petition in bankruptcy in December 1982. Defendant bank caused the trustee in bankruptcy to obtain an order of abandonment of the property. The Elliotts' debts to the plaintiffs and the bank were discharged by an order of February 23, 1983.

The bank paid to plaintiffs the installment payments due for December 1982 through February 1983 and then defaulted. Plaintiffs' demands for installment payments due thereafter were ignored. After the Elliotts' discharge in bankruptcy, the bank requested that its insurance agency issue a liability and casualty policy for the property in its name but later allowed the policy to expire. It notified the tenants in possession of the property that it was the acting landlord and collected rent from the three tenants, apparently from December 1982 until July 1983. Plaintiffs thereafter took over payments for insurance and property taxes, but received no rent from any of the tenants.

Plaintiff introduced proof of contract damages of $29,494.91 for the balance due on the contract. Attorney fees and costs of $10,315.35 were awarded by the court after hearing testimony on reasonableness of the time spent on the case by plaintiffs' attorneys and the existing one-third contingent-fee agreement as compared to customary hourly fees.

In this appeal, defendant raises several issues: (1) whether the assignment instrument is unenforceable against the bank because it violates the Statute of Frauds; (2) whether the trial court erred by finding the terms of the installment contract enforceable against the bank as assignee of the vendees' interest because the assignment instrument is by law in the nature of a mortgage subject only to the remedy of foreclosure; (3) whether the trial court erred by not requiring plaintiffs to tender into court a deed and evidence of merchantable title; and (4) whether the trial court erred as a matter of law in awarding damages for the balance due on the installment contract without regard to the

market value of the property at the time of breach. We affirm.

■ The bank's contention that the assignment instrument violates the Statute of Frauds is not well taken. First, the defense has been waived for failure to plead it as an affirmative defense. (*Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 389 N.E.2d 226.) Second, assuming *arguendo* that it has not been waived, the bank is nonetheless estopped to deny the assignment by its conduct in preparing it, duly recording it and performing pursuant to its terms. *Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.

■ The next issue presented for our review is not novel to our court, but the body of case law addressing it is sparse, indeed. We are asked to determine whether the assignment here rendered the bank liable for the balance due on the installment contract entered into between the assignor/purchasers (the Elliotts) and the vendors (plaintiffs Pelz). It is settled law in this State that "[a]n executory contract for the purchase of real estate may be assigned, and the interest that is acquired is protected in a court of law." *In re Estate of Martinek* (1986), 140 Ill. App. 3d 621, 630, 488 N.E.2d 1332, 1338, citing *Davidson v. Dingeldine* (1920), 295 Ill. 367, 373, 129 N.E. 79.

In *Quest v. Robertson* (1979), 71 Ill. App. 3d 678, 679, 388 N.E.2d 1335, 1336, the court considered the following issue:

> "[W]hether or not the assignee of a vendee's interest under an installment contract for the purchase of realty also assumed the duties, obligations or liabilities which the contract imposed upon the assignor-vendee."

In *Quest,* the Robertsons entered into an installment contract for the purchase of real estate from the Quests. The Robertsons assigned their interest to the Adamsons. The Adamsons defaulted on the installment contract, and the Quests brought suit against the Robertsons for breach of contract. The Robertsons filed a third-party suit against the Adamsons for damages in the amount of the balance due on the installment contract plus attorney fees and costs.

Then, the Quests settled with the Robertsons, and the cause proceeded to trial on the third-party complaint. The trial court found for the Robertsons and entered judgment accordingly.

On appeal, the court considered the following principles:

> "[A]n assignee's acceptance of an assignment of a contract, without any express assumption of the obligation of the contract, does not bind the assignee merely because the contract provided that it was binding upon the assigns of the respective parties. (*Kneberg v. H. L. Green Co., Inc.* (7th Cir. 1937), 89 F.2d 100, 104.) Instead, it is the rule in this State, at least in regard

to contracts for the purchase of realty, that:

'An assignee does not become liable on an executory contract of the assignor unless by his contract he assumes such liability, and the mere assignment of an interest under a contract will not render the assignee personally liable for moneys thereafter to become due.' (*Lunt v. Lorscheider* (1918), 285 Ill. 589, 593[, 121 N.E. 237, 239].)

Thus a mere 'naked assignment' (285 Ill. 589, 593[, 121 N.E. 237]) does not render the assignee liable on an executory contract for the purchase of realty." (*Quest v. Robertson* (1979), 71 Ill. App. 3d 678, 681, 388 N.E.2d 1335, 1338.)

Conversely, it should be added, an assignment which is not "naked"— *i.e.*, one by which the assignee accepts obligations to perform duties under the contract—may expose a purchaser's assignee to liability for unpaid installments due on a contract for the sale of land.

In *Quest*, the assignment instrument lacked express language by which the assignee agreed to become liable for the duties assumed by the assignor in the contract with the seller of the real estate. The document before the court in *Quest* was a "short form" providing only that " 'For and in consideration of One ($1.00) Dollar and for other good and valuable considerations' the Robertsons 'hereby assign, transfer and set over and quit claim unto' the Adamsons 'all of [their] right, title and interest in and to the above contract and the premises therein described ***.' " (*Quest v. Robertson* (1979), 71 Ill. App. 3d 678, 680, 388 N.E.2d 1335, 1337.) It was prepared by the assignors' attorney, and there was neither testimony nor any evidence of record that the assignees "expressly agreed to assume the affirmative duty of making the payments required by the installment contract."

Despite the foregoing, the assignors in *Quest* argued that the assignees nonetheless had *impliedly* agreed to assume duties under the installment contract by accepting the assignment after the Robertsons' attorney, Mr. Nye, had explained to them that the effect of the assignment was to confer on the assignees responsibility for making payments under the contract.

Inference of an agreement by the assignee to perform contractual duties assumed by the assignor is recognized in the law of contracts. (Restatement (Second) of Contracts sec. 328 (1981).) The difficulty arises when the underlying contract is for the purchase of real estate. The *Quest* court, while rejecting the assignors' argument that the assignees there (the Adamsons) had impliedly agreed to assume their contractual obligation to pay, acknowledged that it was faced with a "close question." The court held, nonetheless, that there was insuffi-

cient evidence to support the trial court's holding that the assignees had expressly or impliedly assumed the duty of paying the balance due on the installment contract. Accordingly, the court reversed the judgment of the trial court as being contrary to the manifest weight of the evidence.

As noted by the court in *Quest,* the American Law Institute's Restatement (Second) of Contracts (1981) contains a caveat to the rule concerning the interpretation of words and the effect of acceptance of an assignment. Restatement (Second) of Contracts sec. 328 (1981) (formerly sec. 160 of the tentative drafts).

The general rule is that:

> "(2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise."

Immediately thereafter, the Institute provides:

> "*Caveat*: The Institute expresses no opinion as to whether the rule stated in Subsection (2) applies to an assignment by a purchaser of his rights under a contract for the sale of land."

The rule and its caveat are explained by the Reporter in comment (c):

> "When the purchaser under a land contract assigns his rights, the assignment has commonly been treated like a sale of land 'subject to' a mortgage. In this view acceptance of the assignment does not amount to an assumption of the assignor's duties unless the contract of assignment so provides either expressly or by implication. A provision in the land contract that it will bind the 'assigns' of the parties does not change this result. \*\*\* The assignee may, however, bind himself by later action such as bringing a suit for specific performance. Decisions refusing to infer an assumption of duties by the assignee have been influenced by doctrinal difficulties in the recognition of rights of assignees and beneficiaries. Those difficulties have now been overcome, and it is doubtful whether adherence to such decisions carries out the probable intention of the parties in the usual case. But since the shift in doctrine has not yet produced any definite change in the body of decisions, the Institute expresses no opinion on the application of Subsection (2) to an assignment by a purchaser under a land contract."

As the Reporter's notes to comment (c) indicate, the decisions considering the implied assumption of contractual duties by a real estate purchaser's assignee present a rather murky picture of the status of

the law nationwide. See also *Haarmann v. Davis* (Mo. 1983), 651 S.W.2d 134 (declaring the rule in Missouri as follows: "While an assignee's assumption of contractual obligations may be implied from clear and convincing evidence that the parties agreed to a contract of assumption, mere acceptance of benefits under a contract of sale is not sufficient"); accord, *Cedar Point Apartments, Ltd. v. Cedar Point Investment Corp.* (8th Cir. 1982), 693 F.2d 748 (construing Missouri law), *cert. denied, Cedar Point Investment Corp. v. Cedar Point Apartments, Ltd.* (1983), 461 U.S. 914, 77 L. Ed. 2d 283, 103 S. Ct. 1893.

As acknowledged by the *Quest* court, the law of Illinois appears to be aligned with the modern trend to infer an assumption by the assignee to a land contract of his assignor's contractual duties upon clear and convincing evidence that such assumption was intended by the parties to the assignment contract. Factually, *Quest* did not present the appropriate setting for inferring an assumption of the assignor's contractual duties. The case before us does.

Here, as in *Quest,* the assignment document fails to contain language by which the assignee expressly agrees to assume the duties of the purchaser-assignor. And that is where the factual similarities end. The document in question, unlike that considered in *Quest,* is a very carefully drafted instrument setting forth in four pages of considerable detail the circumstances under which the bank will be deemed to be the "vendee" under the installment contract with the Pelzes and thereby obtain title to the real estate by warranty deed.

The reference to "financing purposes" and loans as they appear in the document do not convert this assignment into an instrument in the nature of a mortgage. (*Cf. Havana National Bank v. Wiemer* (1975), 32 Ill. App. 3d 578, 335 N.E.2d 506 (trust deed was obtained to secure prior loans and was not intended by parties to extinguish record owners' indebtedness to trustee bank).) The instrument was drafted by the bank's attorney. Thus, any ambiguities in the document must be construed against the bank.

The instrument provides that, "[i]n the event [the assignors] shall fail to make the payments due on the Installment Contract \*\*\* the \*\*\* Bank \*\*\* may make the installment payments \*\*\*, and in the event the \*\*\* Bank \*\*\* shall pay any such installments [the Elliotts] shall immediately reimburse the \*\*\* Bank \*\*\*, and upon failure to do so, the \*\*\* Bank \*\*\* *shall be deemed the vendee* \*\*\*." (Emphasis added.) We believe that the foregoing language, if not expressly providing for the bank's assumption of the assignors' duties under the contract, certainly provides ample grounds for inferring such assumption when the bank in fact makes an installment payment upon its assignors' default. It is

apparent that the bank initially set out to perform as the vendee pursuant to the above-quoted section of the assignment document when it procured the order of abandonment through the bankruptcy court, when it notified the tenants that it was acting as landlord and collected rents from them, when it ordered changes in the insurance policies for the property, and when it paid installment payments due to the Pelzes. Subsequently, however, it appears that the bank determined that the value of property was less than the amount still owed on the installment contract. At this point, it ceased making payments, allowed the insurance to lapse and ignored the Pelz' demands, giving rise to the instant lawsuit.

■ Under the facts and circumstances here presented, we find no error in the trial court's conclusion as a matter of law that the assignment instrument is not "in the nature of a mortgage," as urged by the bank. Both by the language of the document and by the parties' conduct, the conclusion is inescapable that the assignment was intended to transfer both the assignors' rights and their duties under the installment contract to the bank upon default by the assignees.

■ The bank's next argument that plaintiff cannot maintain his action for damages without tender of deed is without merit. The law in this regard is clear:

> "Where one party evidences his readiness and willingness to perform and the other party refuses to go through with the deal, tender of a deed becomes unnecessary. (*Vulcan Corp. v. Cobden Machine Works* (1949), 336 Ill. App. 394, 84 N.E.2d 173.) The law will not require the doing of a useless and futile act. (*Lang v. Hedenberg* (1917), 277 Ill. 368, 115 N.E. 566.)" *Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 329, 389 N.E.2d 226, 229.

■ In this case, the affidavits, pleadings and other evidence of record establish without contradiction that the deed to the property in question is in the hands of an escrow agent pursuant to the terms of the installment contract, and further, that delivery of the deed is not required until the purchaser has fully performed its obligations to pay. There is no evidence whatsoever that suggests plaintiffs are not ready or willing to perform their contract obligations. And it is uncontradicted that the bank has refused to perform further as vendee under the installment contract. Accordingly, the trial court committed no error in granting judgment for plaintiffs in the absence of plaintiffs' formal tender of the deed.

The bank also suggests in its argument that the installment contract cannot be enforced against it without joinder of the Elliotts. This position is advanced without legal reasoning or citation to any author-

ity. Accordingly, the one-sentence subissue is deemed waived. *In re Estate of Cochrane* (1979), 72 Ill. App. 3d 812, 391 N.E.2d 35.

■■■ Finally defendant argues that the trial court erred in awarding contract damages based on the balance due on the installment contract, plus reasonable attorney fees and costs of the lawsuit. The bank argues that the proper measure of damages is the difference between the contract price and the market value of the property on the date of the breach of contract. (*Dickson v. Turner* (1909), 149 Ill. App. 394.) The bank further posits that the trial court's judgment permits plaintiffs to retain title to the property in addition to the money damages, in effect, allowing a double recovery. We reject defendant's arguments.

Contrary to defendant's assertion, the plaintiffs will not retain title and the purchase price. The cases cited in support of the bank's position on the issue of damages (*Dickson v. Turner* (1909), 149 Ill. App. 394; *Kemp v. Gannett* (1977), 50 Ill. App. 3d 429, 365 N.E.2d 1112; and *Sheppard v. Fagan* (1981), 94 Ill. App. 3d 290, 418 N.E.2d 876) do not compel a reversal in this case. As the court acknowledges in both *Sheppard* and *Kemp,* the difference between fair market value of the property and contract price is only one element of damages for the breach of a contract for the sale of real estate. The general rule is that damages "are recoverable as they may fairly and reasonably be considered to have arisen naturally from the breach of the contract itself, or such as may reasonable be supposed to have been [made] in the contemplation of the parties as they made the contract." (*Sheppard v. Fagan* (1981), 94 Ill. App. 3d 290, 292, 418 N.E.2d 876, 879.) In the absence of any evidence to the contrary, the foregoing rule will support a recovery of the balance due on the contract as provided for in the acceleration clause and reasonable fees and court expenses where such are proved as a consequence of defendant's breach. Here, defendant produced no evidence to contradict plaintiffs' proof of damages. We find no error in the court's award of damages in the amount due on the installment contract plus related costs and fees as established by plaintiffs' evidence.

Further, it is clear that once judgment is satisfied, the bank is entitled to a warranty deed and evidence of title as provided for in paragraphs 9 and 10 of the installment contract.

Having found no errors in the matters raised in this appeal, we affirm the judgment of the circuit court of Marshall County.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.