681 F.Supp. 1381 (1988)
Stanley M. PARISER, M.D., Plaintiff,
v.
CHRISTIAN HEALTH CARE SYSTEMS, INC., Defendant.
No. 84-293C(5).
United States District Court, E.D. Missouri, E.D.
March 7, 1988.
*1382 Anthony J. Sestric, St. Louis, Mo., for plaintiff.
Kemper R. Coffelt, Thaddeus Eckenrode, Coffelt & Coffelt, Clayton, Mo., Armstrong, Teasdale, Kramer & Vaughn, Richard A. Oertli, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court pursuant to the April 16, 1987 order of the Eighth Circuit Court of Appeals, 816 F.2d 1248, which reversed this Court's previous ruling on plaintiff's breach of contract claim.[1] The facts of this case have been amply laid out in the Court's January 17, 1986 opinion as well as in the decision by the Court of Appeals.[2] For purposes of this memorandum, the Court will recount only the basic facts relevant to the breach of contract claim.

STATEMENT OF FACTS.
The plaintiff is a medical doctor whose staff privileges were suspended in October of 1982 by the Southern Medical Center in Cairo, Illinois (Southern). The defendant is a Missouri corporation which managed the Center until its management agreement terminated on September 1, 1985. The Center closed permanently on December 1, 1986. In March of 1981, plaintiff applied for and received medical hospital privileges at Southern. These privileges were renewed in March of 1982.
In late 1985, the administrator of the medical center, Ben Felton, discovered that one of the physicians at the center was not admitted to practice medicine in the State of Illinois. Pursuant to the summary dismissal rules in the hospital's bylaws, this physician was dismissed from the staff. Following this discovery, Felton became concerned about the qualifications of other staff personnel and decided to conduct an evaluation of all medical staff members. In the course of further investigation and evaluation of physician credentials, Felton made the discovery that led to Pariser's suspension. The application for admitting privileges at the Southern Medical Center contained a section concerning disciplinary actions that may have been taken against the applicant in relation to the practice of medicine. Inter alia, there were questions that asked whether the applicant had ever (1) been denied membership on a hospital staff; (2) had his or her privileges at any hospital suspended, revoked, or not renewed; or (3) been denied membership or renewal of membership or subjected to disciplinary *1383 action in any medical organization. On his application, plaintiff answered no to each of the questions. A paragraph at the end of the application states that all information provided is true to the best of the applicant's knowledge and belief, and that the applicant understands that significant misstatements or omissions are cause for denial of appointment or summary dismissal from the hospital staff.
In reviewing plaintiff's credentials, Felton contacted Dr. Wayne Isaacs, former administrator of the Anna Mental Health Center in Anna, Illinois (Anna). Dr. Isaacs had been administrator of the facility during a period when the plaintiff was a probationary staff physician there. After a six-month tenure, plaintiff was denied a permanent position on the hospital's staff; in essence he was fired. During their telephone conversation, Isaacs informed Felton of the plaintiff's termination from Anna.
On October 22, 1982, the executive committee of the medical staff held a meeting to discuss several charges made by Dr. Victor Supris concerning the plaintiff's competence and his cooperation with other doctors and the nursing staff. After discovering the circumstances of plaintiff's departure from Anna, Felton added the issue of plaintiff's application to the meeting agenda. The members of the executive committee present at the meeting were Surpris and Drs. Charles Yarbrough and Crisostomo Lozada. Lozada was not a regular member of the executive committee, but appeared as a replacement for Dr. Gemo Wong, the head of the medical staff at Southern, who recused himself because of past differences with Dr. Pariser. Also present at the meeting were Felton and Ms. Pat Burt, Supervisor of Medical Records at the hospital, who took the minutes.
As the meeting progressed, the committee first reviewed a letter from Dr. Surpris containing his charges against the plaintiff. Felton then presented his charge that the plaintiff lied on his application, and asked the committee to decide whether it wished to pursue Surpris' charges or instead wished to suspend the plaintiff's privileges based on the inaccuracies in his application. The doctors on the committee chose the latter course, voting unanimously to suspend Dr. Pariser's privileges summarily pending submission and review of a new application from the plaintiff.
Pariser was informed of the executive committee's decision on the same day. In response, he wrote the committee a letter in which he acknowledged that he had been "fired" from Anna, but contended that his application was nonetheless accurate. He also requested reinstatement. While the hospital's by-laws provided that plaintiff was entitled to a hearing before the executive committee, he did not request one. He also did not submit the new application the committee had asked for. Plaintiff's privileges were never reinstated. Though he attempted for some time to continue his private practice without hospital admitting privileges, he eventually ceased practice.
Dr. Pariser filed this action in February 1984. In July 1984, this Court dismissed plaintiff's claim that termination of his privileges violated his procedural due-process rights on the ground that no state action was involved. After a three-day bench trial, the Court rejected each of his remaining claims. The Court concluded that there had been no breach of contract because the executive committee's actions were consistent with the hospital by-laws  an enforceable part of the contract between the plaintiff and the defendant's hospital. The Eighth Circuit Court of Appeals reversed this Court's breach of contract ruling, holding that the decision to suspend plaintiff was rendered by a biased tribunal.
While the Court of Appeals opined that plaintiff's allegation of bias on the part of Dr. Lozada was not supportable, it accepted plaintiff's argument to that effect regarding Dr. Surpris.[3] Since Dr. Surpris had filed charges concerning the plaintiff's competence and his relations with co-workers, the Court of Appeals found that his *1384 prosecutorial role in the executive committee should have precluded his participation in the summary proceedings which resulted in plaintiff's ultimate suspension. In conclusion, the Court of Appeals held that plaintiff was entitled to a judgment declaring that defendant was in breach of contract but expressed severe doubts as to whether plaintiff was entitled to any relief beyond such declaration:
Much of the parties' arguments on this appeal has been directed to the question whether Pariser in fact falsified his application. The District Court found that he did, and we agree. Thus, it seems clear that the executive committee would have taken the action it did even if it had had three unbiased members, instead of only two. In this situation, there is a substantial question in our minds whether Pariser is entitled to the lost earnings he seeks. (Reinstatement is not in question: Southern Medical Center is no longer in operation.) The contract has been broken, all right, but if the same thing would have happened to Pariser anyway, the breach may not be a legal cause of any monetary damages. This question of relief has not been briefed in this Court, and we leave it to the District court to decide on remand.
Pariser v. Christian Health Care Systems, Inc., 816 F.2d 1248, 1253 (8th Cir. 1987). On remand, this Court will confirm the appellate court's preliminary impressions.

CONCLUSIONS OF LAW.
As stated in the preceding opinions of this Court and the Court of Appeals, it is well-settled that under Illinois law a hospital's by-laws are an enforceable part of the contract between a hospital and a physician with privileges at that hospital. Nagib v. St. Therese Hospital, Inc., 41 Ill.App.3d 970, 355 N.E.2d 211, 213 (1976); Maimon v. Sisters of the Third Order of St. Francis, 120 Ill.App.3d 1090, 76 Ill.Dec. 517, 519, 458 N.E.2d 1317, 1319 (1983). Adherence to such by-laws, however, is not all that is required; partiality or bias by members of the body that expels a physician, even where the by-laws are followed, renders the expulsion invalid. Maimon, 76 Ill.Dec. 519-20, 458 N.E.2d at 1319-20.
In this case, it was determined by the Court of Appeals that one of the three voting members of the medical staff executive committee that suspended plaintiff's hospital privileges was indeed biased thus giving rise to a breach of contract on the part of the defendant. Given this breach, however, it is this Court's task to determine what remedy is appropriate and what damages, if any, the plaintiff is entitled to. As noted above, reinstatement is no longer a remedy since the Southern Medical Center has gone out of existence in the years since plaintiff's suspension.
Of the two remaining executive committee members who voted in favor of plaintiff's suspension, one of them, Dr. Lozada, has already been cleared of any bias toward plaintiff regarding the summary suspension proceeding. The Court of Appeals' review of the record yielded the conclusion that Dr. Lozada's economic interests were not particularly adverse to those of the plaintiff at the time of the decision.[4] As for Dr. Yarbrough, the other voting member of the executive committee, this Court's review of the evidence in this case likewise yields no impression that he held any negative bias toward the plaintiff at the time of the proceeding. In light of these findings and the established fact that the three-member committee voted unanimously to suspend plaintiff's hospital privileges, it is clear that plaintiff would have been suspended regardless of the presence of a biased member on the committee. Even if another individual had taken Dr. Surpris' place on the committee  and voted in plaintiff's favor  the majority vote still would have meant a summary suspension for plaintiff pending whatever subsequent action Dr. Pariser might have initiated.[5]
Even in the circumstances present, however, the plaintiff had the opportunity and *1385 the right to pursue additional avenues of relief. There is no question that the bylaws afforded him the opportunity for a hearing:
A practitioner whose clinical privileges have been summarily suspended shall be entitled to request that the executive committee of the medical staff hold a hearing on the matter within such reasonable time period thereafter as the executive committee may be convened in accordance with Article VIII of these bylaws.
Article VII, § 2(b), Medical Staff By-laws, Southern Medical Center. As noted previously, plaintiff never requested such a hearing despite the fact that he was provided with a copy of the by-laws soon after his summary suspension.
In Illinois, the general rule on contract damages is that they are recoverable as they may fairly and reasonably be considered to have arisen naturally from the breach of contract, or as may reasonably be supposed to have been contemplated at the making of the contract. Pelz v. Streator National Bank, 145 Ill.App.3d 946, 956, 99 Ill.Dec. 740, 748, 496 N.E.2d 315, 323 (1986), Sheppard v. Fagan, 94 Ill. App.3d 290, 49 Ill.Dec. 856, 859, 418 N.E.2d 876, 879 (1981). A corollary of this rule is the principle that damages for breach of contract should place the aggrieved party in the position he would have been in if the contract had been performed. Illiana Machine and Manufacturing Co. v. Duro-Chrome Corp., 152 Ill.App.3d 764, 105 Ill. Dec. 689, 691-92, 504 N.E.2d 974, 976-77 (1987), Kalal v. Goldblatt Brothers, Inc., 53 Ill.App.3d 109, 11 Ill.Dec. 120, 368 N.E. 2d 671, 673 (1977). In this case, it appears likely that plaintiff would have been in no different position but for the breach, than if a completely unbiased executive committee had considered his summary suspension. It is established that plaintiff lied in his application to the hospital for staff privileges and there was very strong evidence of this at the time of the meeting in question. The bylaws of the medical staff indicate that summary suspension is appropriate "whenever action must be taken immediately in the best interest of patient care." It is not unreasonable to assume that there are legitimate reasons for suspending a physician who has been terminated at another hospital and has attempted to conceal this fact from the administration of his current admitting hospital. It is not only likely that plaintiff would have been suspended even in the absence of Dr. Surpris, but his suspension would have been in all respects proper were there no biased members of the executive committee.
It is thus the finding of this Court that defendant's breach of contract entitles plaintiff to nominal damages only, and that he is not entitled to any other relief beyond a declaration of defendant's breach of contract.

ORDER
IT IS HEREBY ORDERED that judgment be entered in favor of the plaintiff on the claim for breach of contract.
IT IS FURTHER ORDERED that plaintiff recover nominal damages in the amount of Ten and no/100 Dollars ($10.00).
IT IS FINALLY ORDERED that plaintiff's motion for enforcement of Bill of Costs is GRANTED and that he is entitled to the sum of $1,045.00.
NOTES
[1] The Court of Appeals affirmed the Court's ruling on all other claims.
[2] The appellate decision is in basic agreement with this Court as to the facts of this case with one exception noted in footnote 1 of its holding.
[3] The Court of Appeals did not discuss whether the third member of the medical staff executive committee, Dr. Yarbrough, held any bias. Upon review of the record in this case, this Court finds that he did not.
[4] Despite this very clear holding, the plaintiff has continued to argue that Dr. Lozada should have been disqualified because of his alleged financial interests.
[5] There is no requirement in the by-laws that decisions regarding summary suspension of physicians be unanimous. It is likely, however, that most unbiased medical staff members would have voted with the majority.