[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE OF WHTR REAL ESTATE LIMITED PARTNERSHIP
The defendant WHTR Real Estate Limited Partnership ("WHTR"), which purchased loan documents and a mortgage from the co-defendant bank, has moved to strike claims of breach of contract and conversion brought by the plaintiff SCP Corporation ("SCP"), a party that had held an option to purchase the same obligations.
The counts that are the subject of the motion to strike filed CT Page 3684 by WIHTR are the third count, in which SCP alleges that WHTR is liable for an alleged breach of a contract signed by SCP and Bank of Boston Connecticut, the precursor to co-defendant BankBoston ("bank"), and the fourth count, in which SCP alleges that WHTR unlawfully converted to its own use a claim for deficiency that the plaintiff alleges should have been conveyed to it by the bank.
The contract upon which the plaintiff bases its claims against WHTR has been appended to and incorporated by reference into the allegations of the complaint.
WHTR asserts that the plaintiff has not stated a cognizable claim against it in breach of contract because as a matter of law it had no obligation to SCP under the contract invoked. WHTR asserts that SCP has failed to state a cause of action in conversion and that, alternatively, the statute of limitation has expired on the plaintiff's conversion claim.
Standard of review
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-215 (1992); Ferrymanv. Groton, 212 Conn. 138, 142 1989); Practice Book § 10-39.
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. Bohan v. Last, 236 Conn. 670, 675 1996);Sassone v. Lepore, 226 Conn. 773, 780 (1993); Novametrix MedicalSystems, Inc., v. B0C Group, Inc., supra, 224 Conn. 215; Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." Forbes v. Ballaro,31 Conn. App. 235, 239 (1993). Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v.CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v. New England LogHomes, Inc., 4 Conn. App. 132, 134-35 (1985), cert. dismissed,197 Conn. 801 (1985).
Breach of contract claim (Third Count)
CT Page 3685
In the first forty-six paragraphs of its amended complaint, the plaintiff alleges that on June 19, 1992, it entered into a contract titled "Sale and Assignment Agreement" ("the Agreement") with the bank, which had loaned ten million dollars to a general partnership known as Sursum Corda Properties, which was developing a research facility with Yale University School of Medicine. The loan is alleged to have been evidenced by a promissory note and secured by a first mortgage on real property that the borrower was purchasing for the project. The bank is alleged to have commenced a foreclosure action and other enforcement actions against the borrower and guarantors and, while those actions were pending, to have entered into the Agreement with SCP.
Construction of the terms of a contract is a matter of law, and "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Pesino v. Atlantic Bank of NewYork, 244 Conn. 85, 92 1998).
By the terms of the Agreement, SCP acquired the right to buy the loan documents and seek to substitute itself as the plaintiff in the foreclosure action upon payment of $2,250,000 if the purchase was made before December 15, 1992, or $3,250,000 if the purchase was made after that date but before March 31, 1993. The Agreement further provided that if the bank had taken title between the December and March dates, such that the claim remaining against the debtor was a claim for a deficiency, what would be conveyed to SCP at a closing would be the deficiency claim only. The Agreement provides at paragraph 1(b) that the closing "shall occur on or before that date . . . which is the earlier to occur of (i) March 31, 1993 and (ii) fifteen (15) days following the date (the `Title Date') on which the Assignor acquires fee simple absolute title to the Property . . ." The same paragraph provides that "[i]f the Closing does not occur on or before the earlier of the dates set forth above, then, except as set forth in Paragraph 18 hereof, all of the rights and obligation of the parties hereto under this Agreement shall terminate immediately without notice or action of any kind whatsoever." In paragraph 18, the parties agreed to keep the Agreement and its terms confidential.
The plaintiff alleges that the bank breached the contract by failing to use its best efforts to pursue the foreclosure and CT Page 3686 enforcement actions in such a way that the deficiency claims would come into existence between December 15, 1992 and March 31, 1993. The plaintiff claims that the bank delayed the action, declared the plaintiff's rights to have expired as of March 31, 1993, and then sold the loan documents as part of a multi-million dollar sale of a pool of many loans to WHBB Real Estate Limited Partnership, a predecessor of WHTR, in September 1994.
This court has stricken claims against the bank except the claim of breach of the implied covenant of good faith and fair dealing with regard to the obligations set forth in paragraph 4(b) of the Agreement and the claim of breach of the confidentiality agreement.
The plaintiff claims that WHTR is liable because "it assumed and accepted the Bank's unperformed duties, including the Bank's obligation to convey to the plaintiff deficiency claims against Sursum and the Guarantors." The plaintiff also alleges that the Agreement was "one of the documents assigned to WHBB by the Bank" and that SCP assumed the bank's duties and liabilities under that agreement because it honored certain obligations of the bank under other agreements, specifically, a Forbearance Agreement with the guarantors of the Sursum loan.
The plaintiff also alleges that "[p]ursuant to paragraph 13 of the Sale and Assignment Agreement, and by virtue of the foregoing, WHBB and WHTR, as WHBB's successor by merger, are bound by the sale and Assignment Agreement to the same extent as was the Bank." The cited provision in the Agreement, paragraph 13, states that "[t]his Agreement shall be binding on, and inure to the benefit of, the parties hereto and their successors and assigns."
The plaintiff has not alleged that WHBB or WHTR ever agreed to assume any liability of the bank for prior breaches of the Agreement. The plaintiff does not directly allege that the bank assigned the Agreement to WHBB; however, it alleges at paragraph 38 of the amended complaint that the bank assigned "the Note, the Mortgage and all other documents and claims relating to the Loan [to WHBB]." The plaintiff argues that this allegation supports the implication that the bank assigned the Agreement as a document "relating to the Loan."
In its motion to strike, WHTR asserts that there is no cause of action against an assignee for an expired obligation, and that CT Page 3687 the allegations of the complaint are insufficient to state a cause of action against it for the liabilities of the bank for any breach occurring before the expiration date.
This court has stricken claims against the bank that were based on the assertion that the bank's obligation to convey deficiency claims existed after March 31, 1993. The plain words of the contract defeat the plaintiff's conclusory allegations that such an obligation existed after March 31, 1993. Accordingly, even if the bank had assigned the Agreement to WHBB as the plaintiff has barely alleged, there was no obligation left to perform under that agreement because the bank's duty to convey any rights under the loan documents, including deficiency claims, ended on March 31, 1993, almost eighteen months before the transfer of the loan documents to WHBB.
The plaintiff asserts, however, that WHTR is liable for breaches of the Agreement by the bank that occurred before the alleged assignment of the Agreement to WHBB. While Connecticut's appellate courts do not appear to have had an occasion to consider precisely the issue of the liability of an assignee for pre-assignment breaches by the assignor, numerous other courts have ruled that to be liable for the assignor's nonperformance of duties under a contract, the assignee must have expressly assumed liability for the prior breaches. See, e.g., Homa v. FriendlyMobil Manor, 612 A.2d 322, 329-30 (Md.App. 1992), appeal dismissed, 624 A.2d 490 (Md. 1993); Rittenberg v. DonohueConstruction Co., Inc., 426 A.2d 338, 341-42 (D.C.App. 1981);Pumphrey v. Kehoe, 276 A.2d 194 (Md. 1971); Tel-Hotel Corp. v.Lexnott Corp., 124 N.Y.S.2d 159 (1953); Litton ABS v. Red-YellowCab Co., 411 N.E.2d 808, 810 (Ct.App. Ohio 1978); Quest v.Robertson, 388 N.E.2d 1335 (2d Dist. Ill.), appeal denied,79 Ill.2d 617 (1979).
Illustratively, in Rittenberg v. Donohue Construction Co.Inc., supra, 426 A.2d 338, a plaintiff sought to hold an assignee liable for past breaches of the assigned contract by the assignor. Noting that the complaint did "not allege that [the assignee] bound itself in any way to be responsible for performance of any lease covenants," the court ruled that an assignee is not liable for pre-assignment breaches absent an allegation that it assumed liability for those past breaches. Id., 341. Similarly, in Litton ABS v. Red-Yellow Cab Co., supra, 411 N.E.2d 810, the Ohio Court of Appeals ruled that "an assignment does not cast upon the assignee any affirmative CT Page 3688 liability on the contract assigned unless there is an assumption of the assignor's obligations under the contract." The Ohio court observed that a third party's claims of fraud, misrepresentation and breach of warranty could be asserted only against the assignor, not against the assignee. See also American NationalCo. v. Thompson Spot Welder Co., 164 N.E. 435 (Ohio App. 1928).
Where, as in the case before this court, the assigned contract merely states that it is to be binding on assigns, an assignee does not become liable for any pre-assignment breaches or liabilities of the assignor, unless there is also an express acceptance of such liability at the time of assignment.Rittenberg v. Donohoe Construction Co., Inc., supra, 426 A.2d 341-42. This principle was applied in Quest v. Robertson, supra,388 N.E.2d 1335. In that case, buyers of a car wash entered into an installment contract with the sellers. The contract contained the statement that it was "binding upon . . . the assigns of the seller and the buyer." The buyers assigned their interest to assignees who did not make the installment payments to the seller. The Appellate Court of Illinois ruled that the buyers' assignees were not liable for the buyers/assignors obligation to pay installments because they had not expressly agreed to assume that obligation. Accordingly, the court held that only the original buyers were responsible for the installment payments required by their contract with the sellers.
More recently and closer to home, another Superior Court Judge has granted a motion to strike claims against an assignee for pre-assignment breach, where the plaintiff did not allege any express agreement by the assignee to assume liability for such breach. ICC Performance 2 Limited Partnership v. Pollack, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 313596, 1997 WL 200795 (April 16, 1997, Levin, J.).
The Restatement of Contracts (Second) provides no definitive guidance on the issue of an assignee's duties with regard to prior breaches by an assignor. In the illustrations to § 238 of the Restatement, which concerns delegation of duties to be performed by an assignor, the commentators cite a case indicating that the delegation does not include delegation of liability for past breaches by the assignor. The cited case is Daniels v.Parker, 306 P.2d 735 (Ore. 1957). In that case, a car dealership sold a car to a customer, then assigned the car loan to the defendant, who collected all payments. After the customer sold the car to another buyer, it was discovered that the original car CT Page 3689 dealership had not held valid title to the car, which was a stolen car. The Oregon Supreme Court ruled that the defendant assignee was not liable for the original dealer's breach of contract.
All of the cases cited by the plaintiff concern an assignee's duty to perform the unperformed duties of the assignor under a contract which is still in force, not the duty to compensate the other party for breaches by the assign that occurred prior to the assignment. Pargman v. Maguth, 64 A.2d 456 (App.Div. N.J. 1949), on which the plaintiff relies, in fact applies the principle that the assignee is not liable for past acts of the assignor.
The plaintiff has not alleged that WHBB expressly agreed to assume liability for past breaches of the Agreement by the bank. As the cases cited above make clear, the provision in the Agreement itself that the agreement will be binding on assigns does not constitute express assumption of such liability. Without such an express assumption of the liabilities of another, the assignee is not liable for the pre-assignment breaches simply on the basis of the alleged assignment itself. The plaintiff has failed to state a cause of action in breach of contract against WHTR.
Conversion Claim (Count Four)
WHTR has moved to strike the fourth count of the complaint, in which the plaintiff alleges that WHTR converted to its own use deficiency claims that were the property of the plaintiff. The movant asserts two grounds: (1) the plaintiff has not described an ownership interest to which a conversion claim applies, and (2) the statute of limitation has passed on a conversion claim if one exists.
"Conversion" of an unadjudicated claim
WHTR asserts that the allegation that it acquired the loan documents by assignment after March 31, 1993, does not state a cause of action in conversion. Conversion is
an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. It is some unauthorized act which deprives another of his property permanently or CT Page 3690 for an indefinite time, some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm.
Aetna Life Casualty Co. v. Union Trust Co., 230 Conn. 779,790-91 (1994).
As the movant points out, a party claiming conversion must have a property interest in the thing that is claimed to have been converted. The plaintiff in this case alleges only that it should have been the owner of the deficiency claim, had the bank not breached its obligation to pursue the foreclosure action so that the deficiency claim would have come into existence before the Agreement terminated on March 31, 1993. The text of the Agreement defeats any claim that the plaintiff had a right to the deficiency claim even if that claim did not come into existence until after March 31, 1993, since the Agreement provides at paragraph 1(b) that if the closing does not occur on or before that date or within fifteen days of any earlier date on which the bank acquired title to the mortgaged property, "all the rights and obligations of the parties hereto under this Agreement shall terminate immediately without notice or action of any kind whatsoever" except the confidentiality rights specified in paragraph 18.
The plaintiff has not alleged that the deficiency claims came into existence before the termination date and that it was the owner of the claim before that date. While the plaintiff has a claim for breach of contract for the banks alleged failure to use its best efforts to make these claims come into existence before the expiration date, its complaint in this regard is clearly that it should — but does not — own the deficiency claims; and it has asserted a claim against the bank for their value.
Even assuming that property other than chattels is subject to a conversion claim, an issue left open by the Supreme Court inAetna Life Casualty Co. v. Union Trust Co., supra,230 Conn. 790 n. 6, an essential element of a claim in conversion is an allegation of actual ownership of the asset claimed to have been converted. The plaintiff has alleged only a claim to ownership, not actual ownership.
The consequences of recognizing a claim for conversion where CT Page 3691 the property at issue is merely the subject of a claim, not of an established property right, are enormous. If this tort applied wherever a party had a claim to property, rather than actual ownership, no buyer could acquire contested property without being subject to tort liability from unknown and perhaps undiscoverable claimants of an asset.
The plaintiff has cited no case in which a party that alleged only a claim to property, not ownership of it, has been held to have stated a claim in conversion when another party acquired the asset from its ostensible owner. This court concludes that the allegations of the complaint, including as they do the incorporated text of the Agreement, do not state a cause of action in conversion against WHTR.
Statute of limitation
Even if the allegation that acquisition of loan documents after expiration of another party's option were viewed as stating a cause of action in conversion, the statute of limitation bars the claim.
The event that the plaintiff identifies as the act of conversion was WHBB's and WHTR's receipt by transfer from the bank of the deficiency claims "with the intent to acquire such claims for themselves." (Amended complaint, paragraphs 54, 55). The receipt by transfer is the only conduct claimed to give rise to the conversion claim. The plaintiff alleges that the transfer took place in September 1994 (Amended complaint, paragraph 38). The plaintiff did not commence its action against WHTR until January 15, 1998.
In its brief, the plaintiff claims that it alleged a continuous course of conduct by which WHTR asserted ownership of the deficiency claims. The text of the complaint does not support this argument. In paragraph 54 of the amended complaint, the plaintiff alleges that "WHBB and WHTR received by transfer from the Bank the deficiency claims with the intent to acquire such claims for themselves." Paragraph 55 expressly limits the claimed act of conversion to the acquisition of the claim, referring back to paragraph 54: "By virtue of the foregoing, WHBB and WHTR have asserted ownership rights over the deficiency claims to the exclusion of the plaintiff." (Emphasis added.)
Conversion is a tort, and the general three-year statute of CT Page 3692 limitation applicable to tort actions, Conn. Gen. Stat. §52-577 applies. The plaintiff has not alleged any facts that would support any tolling doctrine. On its face, therefore, the conversion claim is time-barred.
Conclusion
The motion to strike is granted as to both counts of the complaint addressed to WHTR Real Estate Limited Partnership.
Beverly J. Hodgson Judge of the Superior Court